**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cr-00122** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **PROKERRYON PRIMM** | ) | |

## MEMORANDUM and ORDER

Before the court is defendant Prokerryon Primm's Motion to Withdraw Guilty Plea (Doc. No. 134), which supplements Primm's *pro se* motion for the withdrawal of guilty plea and appointment of new counsel (Doc. No. 110), filed several months previously.

The *pro se* motion for the appointment of new counsel will be denied as moot, previous counsel having already withdrawn and new counsel having been appointed at the same time, in September 2022. (*See* Doc. No. 113.) Further, for the reasons set forth herein, the *pro se* motion and the formal Motion to Withdraw Guilty Plea filed by counsel will both be denied.

## I.       BACKGROUND

In September 2020, the government filed a Criminal Complaint charging Primm with being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924, possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Doc. No. 1.) As set forth in the Statement of Ryan Singleton, an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, attached to the Complaint, the federal charges arose from an investigation by state law enforcement officers that involved controlled buys and the use of confidential informants and culminated in the execution of a narcotics search warrant at Primm's residence on July 28, 2020.

(Doc. No. 1, at 2.) Singleton's Statement also sets forth Primm's extensive criminal history, including two convictions for felony evasion of arrest, two narcotics-related convictions, one for theft over $1,000, and a federal conviction in this district for being a felon in possession of a firearm. (*Id.* at 3.) The first Indictment, incorporating charges consistent with the Criminal Complaint, was handed down in June 2021. (Doc. No. 19.)

Primm, through counsel, filed a Motion to Suppress on March 7, 2022. (Doc. No. 51.) On the same day, a Superseding Indictment was filed, adding Rotez McNeal, Primm's half-brother, as a defendant and adding a charge against both defendants of conspiracy to distribute and to possess with intent to distribute a quantity of heroin over the course of some five months, ending on July 28, 2020. (Doc. No. 53.) Primm argued in his Motion to Suppress that the affidavit in support of the search warrant for his residence failed to establish an adequate nexus between the illegal activity and the residence and that the warrant was not saved by the good-faith exception created by *United States v. Leon*, 468 U.S 897, 922 (1984). (*Id.*) Counsel for co-defendant McNeal subsequently moved, and was granted leave, to join and supplement Primm's Motion to Suppress. (Doc. Nos. 81, 86.) In his Motion to Join, McNeal stated that he intended to request a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), "due to deliberate and reckless material misrepresentations made by the search warrant affiant, Detective Jaren Breece," as detailed in the motion. (Doc. No. 81, at 2.) Most notably, McNeal alleged in his Motion to Join that "Detective Breece deliberately misrepresented that during both of the June 2020 controlled buys conducted with the use of an informant working with the Cheatham County police, . . . the informant received felony amounts of heroin," even though the confidential informant had actually communicated a belief that the drugs purchased on one of the two dates were "fake," and the

substance tested negative on a field drug test for the presence of heroin and fentanyl. (*Id.* at 3.)[1]

On June 9, 2022, one day before he was due to file his supplement to Primm's Motion to Suppress and a week before the hearing scheduled on that motion, McNeal instead filed an unopposed motion to convert the scheduled suppression hearing to a change of plea hearing. (Doc. No. 92.) This motion states that McNeal had reached an agreement with the government and had decided he would rather enter a plea than pursue the Motion to Suppress. The next day, Primm filed a similar motion, through counsel, indicating that he wished to enter a change of plea and to convert the hearing on the Motion to Suppress, scheduled for June 16, 2022, to a change of plea hearing. (Doc. No. 94.) The court granted both motions and cancelled the hearing on the Motion to Suppress. (Doc. Nos. 93, 95.)

At the plea hearing eventually held on July 27, 2022, Primm expressed some reluctance to go forward with the plea and to give up his Motion to Suppress. Primm's experienced attorney represented to the court that, not including cases that had actually gone to trial, he had spent more face-to-face time with Primm than with any other client in his recollection. (Doc. No. 144, at 2.) Despite counsel's efforts, however, he was not entirely persuaded that Primm understood his situation. The court asked Primm if he wanted "to go to trial rather than have a guilty plea." (*Id.*) Primm stated that he wanted to "renegotiate some of [his] plea agreement," because, he claimed, the original deal offered to him had been for three years of supervised release. (*Id.*) His attorney explained that the first draft of the Plea Agreement mistakenly showed three years of supervised release rather than five, but there was no error in the custody provision. The Assistant United States Attorney ("AUSA") explained that (1) five years was the maximum term of supervised release,

[1] Laboratory tests apparently confirmed that the drugs were not fake. (*See* Doc. No. 104, at 6.)

and (2) there was no deal on supervised release, as that issue was left up to the court.

The defendant then told the court that he did not believe he and his attorney were seeing "eye to eye," as his attorney was telling him one thing but he was reading cases that told him something different. (*Id.* at 5.) The court asked the prosecutor to leave the courtroom so the court could have a more candid conversation with the defendant and his attorney, in recognition of the still outstanding suppression issue. (*Id.*) After the AUSA exited the courtroom, counsel for the defendant stated that he firmly believed that the affidavit in support of the search warrant was defective but that, when he finally obtained discovery from the state law enforcement officers who had conducted the investigation, it became apparent to him that there was overwhelming evidence on the six individual sales within the scope of the conspiracy to which the defendant could offer no viable defense. So, in defense counsel's mind, the question of whether the search warrant should be set aside was effectively irrelevant. Counsel expressed his belief, which he had apparently explained repeatedly to his client, that the binding Plea Agreement for a sentence of 108 months provided a better outcome for the defendant than he was likely to receive if he filed a successful motion to suppress the evidence obtained from his residence but still went to trial on the drug sales within the conspiracy charged in the Superseding Indictment. Counsel noted that the AUSA also understood that the underlying police work was somewhat slipshod and the warrant affidavit subject to attack, in recognition of which the negotiated sentence in the Plea Agreement represented a very generous offer by the government. Counsel for the defendant indicated that he had spent many hours visiting his client in jail to go over the evidence, but the defendant still appeared to believe that the whole case should disappear based on defects in the warrant affidavit. (*See* Doc. No. 145 (Sealed Transcript), at 2–5.)

The court then explained to the defendant that, if he withdrew from the Plea Agreement and got a new attorney, the government, in all likelihood, would withdraw the generous plea offer. (*Id.* at 9.) Before calling the AUSA back into the courtroom, the court asked defendant's counsel to explore with the government's counsel whether he believed there was a chance that the same plea bargain would still be on the table if the defendant withdrew from the current agreement and received a new attorney. The court asked defense counsel to ensure that the defendant heard directly from the government's counsel on that issue. The court offered the defendant an additional week to consider his options and weigh his decision of whether to enter a plea. The court also emphasized to Primm that his attorney would "try to get [the AUSA] to be very candid with [him] about what might happen if [he] did not accept this plea agreement," not to pressure him, but to make sure that he was fully informed as to the possible ramifications of his decision. (*Id.*; *see also* Doc. No. 145, at 7.)

With the AUSA back in the courtroom, the defendant then told the court he did not need a week and instead just needed the opportunity to question the AUSA briefly. (Doc. No. 145, at 7.) The AUSA indicated to the defendant that the government could not guarantee that the same plea agreement would remain on the table if the defendant withdrew from the agreement that had already been negotiated and that the likely guideline range without a plea agreement was 262–327 months, much more than the 108 months offered in the Plea Agreement. The AUSA and the court also explained to the defendant that the mandatory minimum consecutive sentence associated with the firearm charge was 60 months, on top of whatever time he received on the three other charges. After the AUSA explained all of this, the defendant affirmatively stated that he understood and that he was fine with 108 months and willing to sign the Plea Agreement. (*Id.* at 11, 12.)

Only after the defendant confirmed that he indeed wanted to go forward with the plea did the court begin the customary colloquy undertaken at every plea hearing. After Primm was sworn in, he averred in open court that he understood the charges against him as enumerated and explained by the court, that he had been honest with his attorney and had told him everything he knew about the facts surrounding the charges, and that his attorney had explained to him what the government would have to prove if he went to trial on the charges and any possible defenses he might have. The defendant affirmed that he was satisfied with his counsel's representation thus far.

The court explained to the defendant the possible penalties associated with the four charges to which he was pleading guilty, including, again, that the possession of a weapon in furtherance of drug trafficking carried a mandatory minimum consecutive five-year prison term, that his prison term would be followed by a period of supervised release to be set by the court, and that, by pleading guilty, he was giving up important constitutional rights, which were also explained by the court. The defendant acknowledged that he had read the Plea Agreement and the Petition to Enter a Plea of Guilty; he stated that he believed he understood the documents. He signed both documents in the court's presence.

The AUSA provided a summary of the evidence the government would have presented if the case had gone to trial, which included six controlled purchases of heroin and fentanyl from the defendant and his brother/co-defendant through confidential informants who were equipped with audio and/or video recording devices. According to the AUSA, during at least one of the purchases from the defendant, law enforcement officers observed the defendant holding a pistol in his lap. The investigation culminated in the search of the defendant's and co-defendant's residence, which turned up guns, drugs, and cash. The AUSA also summarized the defendant's extensive criminal

history.

Following this summary, the court went through the Plea Agreement with Primm to verify that he understood it. The defendant confirmed that he understood the Plea Agreement, had not been pressured psychologically or physically to plead guilty, and did not feel that the court had placed any kind of pressure on him. When the court asked Primm if he accepted the version of the facts put forward by the AUSA, counsel for the defendant interjected that he believed the defendant might "disagree with the characterization of some of the facts" read into the record but would agree that his conduct 'me[]t the elements of the charges that he pled guilty to." (*Id.* at 32.)

In response to this equivocation, the court noted that the defendant, at a minimum, had to agree that "the government, if he went to trial, would be able to establish the elements of these offenses beyond a reasonable doubt." (*Id.*) To confirm that the defendant was pleading guilty because he was, in fact, guilty, the court went over the elements of each of the charges. In response to further questioning, Primm expressly agreed that the government would be able to prove beyond a reasonable doubt that (1) he had knowingly and voluntarily conspired with another person to distribute heroin and to possess heroin with intent to distribute; (2) he had possessed the firearms enumerated in the indictment, despite knowing that he had previously been convicted of a felony and consequently was not supposed to possess any firearms; (3) he had knowingly possessed a quantity of heroin and intended to sell it; and (4) he had knowingly possessed a firearm used in furtherance of the crime of possessing heroin with intent to sell it. (*Id.* at 33–35.) He reconfirmed that he was pleading guilty to these crimes because he was, in fact, guilty of the charges against him. (*Id.* at 35.) The court therefore found that there was a "factual basis for the plea in this case." (*Id.*)

In addition, based on the entirety of the proceedings and the court's observation of the defendant's appearance and responsiveness to the questions asked, the court was satisfied that Primm was in full possession of his faculties, competent to plead guilty, and fully understood the nature of the charges against him, the consequences of pleading guilty, the maximum and minimum penalties provided by law, and the waiver of his constitutional rights. The court found that Primm understood the terms of the Plea Agreement and that he voluntarily offered to plead guilty. The court accepted the plea, reserving acceptance of the binding Plea Agreement until sentencing.

Twenty-six days after this extremely lengthy and focused hearing, on August 22, 2022, Primm submitted his *pro se* motion to withdraw his plea and for the appointment of new counsel, asserting that his attorney had not shown him all of the evidence in his case and had coerced him into entering a plea. (Doc. No. 110, at 1.) He acknowledged that he was not "completely innocent" but maintained that he had been required to agree to "stuff" that was not true in order to "get this plea bargain." (*Id.* at 2.) The court immediately set the matter for a hearing, at which appointed counsel moved to withdraw, and the court appointed new counsel, thus mooting the defendant's request in that regard. (Doc. No. 113.) The withdrawal portion of the *pro se* motion was held in abeyance pending a status conference with new counsel. (*Id.*)

At a status conference conducted on December 19, 2022, Primm's new attorney confirmed that his client wanted him to proceed with assisting him in seeking to withdraw the guilty plea. (*See* Doc. No. 135, at 2.) Counsel stated on the record that the primary purpose of pursuing withdrawal was to permit Primm to file an amended motion to suppress "to add some additional arguments that [prior counsel] should have made and request a *Franks* hearing about some omissions and misrepresentations in the search warrant." (*Id.*) He also explained to the court that

what the defendant really wanted was to talk to the court and express his feeling that the government should offer him a sentence of eighty months (instead of 108 months), even though counsel had explained that the court has no involvement in plea negotiations. (*Id.* at 4.) Counsel for the government emphasized, again, that the low end of Primm's guideline range was 262 months. (*Id.*)

Given the opportunity to speak, Primm told the court that he was concerned about his mother's health, that he was the person who provided care for her, that he was "already 44," and that he was really "just trying to get . . . back to [his] mother." (*Id.* at 7.) He also acknowledged that he understood why he was "locked up" and that "what [he] did wasn't right." (*Id.* at 7–8.) He concluded: "Your honor, I'm asking . . . is it possible [the AUSA] can find in his heart to give me something I can stand to do and possibly get back to my mother." (*Id.* at 8.)

Following a brief recess, counsel for the defendant informed the court that the defendant was "considering sticking with the agreement" but wanted to know whether the court would "consider releasing him on pretrial release until sentencing, if he does so." (*Id.* at 12.) The court indicated only that it would consider such a motion if one were filed.

On December 26, 2022, the defendant filed a Motion for Release Pending Sentencing, in which he expressly stated that he "declined to try to withdraw his guilty plea" and instead "move[d] for release for approximately 60 days pending sentencing." (Doc. No. 128, at 2.) The defendant learned shortly after filing that motion, however, that his quest for release pending sentencing would be frustrated by an outstanding warrant from Cheatham County. He informed the court at a hearing on January 3, 2023 that he was withdrawing the Motion for Release and would instead be pursuing leave to withdraw his plea. (Doc. No. 136, at 2.)

Counsel for Primm filed the supplemental Motion to Withdraw Guilty Plea (Doc. No. 134) on January 13, 2023, arguing that all of the factors relevant to a determination of whether to permit withdrawal of a plea weigh in his favor. The government argues to the contrary. (Doc. No. 139.)

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 11 provides that a defendant may withdraw a guilty plea after the court accepts the plea but prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The purpose of Rule 11(d) is to allow a 'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).

The Sixth Circuit has directed courts, in deciding whether a defendant who seeks to withdraw a plea has shown a "fair and just reason," to consider the totality of the circumstances along with the following factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Catchings*, 708 F.3d 710, 717–18 (6th Cir. 2013) (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds by statute as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000)). The so-called "*Bashara* factors" "are a general, non-exclusive list and no one factor is controlling." *United States v. Taylor*, 719 F. App'x 495, 497 (6th Cir. 2018) (quoting *United States v. Bazzi*, 94 F.3d 1025,

1027 (6th Cir. 1996) (per curiam)). Other courts consider other factors, including whether the defendant offers credible evidence that his plea was not knowing and voluntary, whether he had the close assistance of competent counsel, and whether withdrawal of the plea would inconvenience the court and waste judicial resources. *See, e.g.*, *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). The "most important" of these factors is the first, which addresses "whether the plea colloquy was properly conducted." *United States v. Yansane*, 370 F. Supp. 3d 580, 585 (D. Md. 2019) (citing *United States v. Faris*, 388 F.3d 452, 456 (4th Cir. 2004)), *aff'd*, 828 F. App'x 897 (4th Cir. 2020).

While an intervening change in the law or newly discovered evidence may qualify as "good reasons" to withdraw a plea, *see United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004), *United States v. Garcia*, 401 F.3d 1008 (9th Cir. 2005), a defendant's misapprehension of, or dissatisfaction with, sentencing consequences is not a "fair and just" reason for withdrawing a guilty plea. *See, e.g.*, *United States v. Scott*, 929 F.2d 313, 315 (6th Cir. 1991).

## III. DISCUSSION

### A. Length of Time

The defendant asserts, without discussion, that a "short amount of time" elapsed between the plea and the initial *pro se* motion to withdraw. (Doc. No. 134, at 7.) The government counters that the actual delay is more than four months, in light of the facts that: (1) after consulting with his new attorney, the defendant filed the Motion for Release Pending Sentencing in which he expressly noted that he would not seek to withdraw his plea, and then reversed course again only after he realized that an outstanding state warrant would thwart the possibility of release pending sentencing; and (2) several months after filing the *pro se* motion, he made statements in open court acknowledging that he was not actually innocent but simply believed he should not have to serve 108 months. Alternatively, the government argues that a four-week delay, at best, weighs only

slightly in the defendant's favor. (Doc. No. 139, at 11.)

The Sixth Circuit has noted that a thirty-day delay between entry of a plea and a motion to withdraw is "at the boundary line between what is acceptable and what is not." *United States v. Jannuzzi*, No. 07-4521, 2009 WL 579331, at *3 (6th Cir. Mar. 6, 2009). Although this length of time is typically deemed to weigh "slightly" in favor of the defendant, "[r]egardless of the weight given to the timeliness factor, . . . a defendant needs the remaining factors viewed as a whole to weigh in his favor to demonstrate an entitlement to relief." *Id.* (citing *Dixon*, 479 F.3d at 436–37).

The court finds in this case, particularly in light of the defendant's recent vacillation on the question of whether he actually wanted to pursue his motion to withdraw, that this factor weighs very slightly, if at all, in his favor. Regardless, because the totality of the circumstances do not weigh in the defendant's favor, the weight given to this factor is of minimal importance.

**B.      Reasons for Failure to Move for Withdrawal Earlier in the Proceedings**

Neither party addresses this factor as it relates to the timing of the motion. Instead, they both treat the issue as intertwined with the question of whether fair and just reasons exist to permit the withdrawal of the plea. That question is addressed below. Regarding this factor, the court notes that, when only a short period of time has elapsed between the entry of a plea and the motion to withdraw, the reason for not seeking to withdraw sooner is effectively moot. In this case, however, it is apparent that the defendant's vacillation on the question of whether he actually intended to pursue withdrawal of his plea was related entirely to his concerns about his mother's health and belief that the government should have offered him a shorter sentence in the plea bargain. Once he believed that he might be able to seek release for approximately six weeks before being sentenced, he was willing to abandon the motion; when it became apparent that presentence release would not be possible, he changed course again. The court finds that these concerns do not constitute good reasons for the defendant's protracted delay in deciding whether he *really* wanted to pursue

withdrawal of his plea.

### C. Whether the Defendant Has Asserted or Maintained his Innocence

The defendant has not asserted his innocence and has instead conceded in open court that he is not blameless. (*See* Doc. No. 110. at 2 ("I'm not saying that I am completely innocent."); Doc. No. 135, at 8 ("I understand what I did wasn't right . . . .").) He indicated during the plea colloquy that he did not entirely agree with the government's characterization of the facts, but he averred in court, under oath, that he had engaged in unlawful conduct and that the government would be able to prove the elements of each of the four charged offenses beyond a reasonable doubt. He confirmed under oath that he was pleading guilty because he was, in fact, guilty.

To establish that this factor weighs in his favor, a defendant must have voiced "vigorous and repeated protestations of innocence." *See United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007) (quoting *United States v. Baez*, 87 F.3d 431, 437 (6th Cir. 1996)). Moreover, absent extraordinary circumstances, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established." *Posey v. United States*, No. 3:20-CV-00121, 2020 WL 2129235, at *9 (M.D. Tenn. May 5, 2020) (quoting *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005)).

The defendant has not vigorously or repeatedly protested his innocence. To the contrary, he has repeatedly acknowledged guilt. The defendant's belief that he might be able to prevail on a motion to suppress does not establish factual innocence. Nor does his attorney argue to the contrary. This factor weighs heavily against the defendant.

### D. The Underlying Circumstances

The relevant underlying circumstances are, for the most part, those the parties discuss in connection with the defendant's reasons for his delay in seeking to withdraw his plea. The defendant claims that, due to his previous attorney's failures, he was unaware that he might be able to "mount a strong *Franks* challenge to the search warrant" and did not learn that he could until

several weeks after he had pleaded guilty. (Doc. No. 134, at 7.) The defendant also maintains that, if his motion is granted, he would have a substantial basis for renewing his motion to suppress the search warrant and pursuing a *Franks* challenge. He identifies what he contends amount to five "deliberate or reckless misrepresentations or material omissions" from the search warrant affidavit that, he claims, seriously undermine the already weak connection between the alleged drug dealing and the defendant's residence. (*Id.* at 7, 9.) He also appears to contend that the Motion to Suppress was likely to have been granted on the grounds originally asserted. (*See id.* at 9–10 ("In any event, recent case law shows that the nexus between the sales and the home was too weak to satisfy even the good-faith standard since, although police saw Primm or McNeal drive to the home, they never saw them *go into it.*" (citations omitted)).)

The government contends that the defendant's "desire to tack a *Franks* challenge onto his original counsel's suppression motion is not a valid reason for withdrawing his guilty plea" and, in any event, that the defendant's patent "recalculation of his chances to defeat the indictment in this case" does not constitute good cause for setting aside the plea. (Doc. No. 139, at 12.) The government also points out that, insofar as the defendant seems to be claiming that the discovery of new evidence amounts to a valid reason to withdraw his plea, the government turned over discovery to the defendants well before the plea hearing, and his co-defendant's counsel discussed the possibility of a *Franks* hearing in a public filing more than three months prior to the change of plea.

The court finds that withdrawing from the Plea Agreement in order to pursue a Motion to Suppress originally filed before the defendant entered his guilty plea does not amount to a fair and just reason for withdrawing the plea. *Accord United States v. Hughes*, 392 F. App'x 382, 386 (6th Cir. 2010) (observing that the court had never "found that a defendant's post-plea expression of

the desire to pursue a motion to suppress will itself establish a fair and just reason for withdrawal"); *United States v. Sanders*, 125 F. App'x 685, 687 (6th Cir. 2005) (finding "no published precedent for the proposition that a motion to withdraw a guilty plea . . . can be supported, absent an assertion of actual innocence, by the claim that a motion to suppress should have been filed" and that numerous unreported decisions hold to the contrary (collecting cases from other circuits and districts)).

The record also defeats the defendant's assertions that his previous attorney withheld information from him and that he was unaware when he pleaded guilty of facts that increased the likelihood of success on the Motion to Suppress. Previous counsel expressed to the court during the plea hearing, in the defendant's presence, his belief that the Motion to Suppress had a fairly strong likelihood of success. However, he also explained to his client and the court his belief that the agreed sentence in the Plea Agreement was shorter than the sentence the defendant was likely to receive if he rejected the Plea Agreement, successfully moved to suppress all of the evidence obtained during the search of his residence, and went to trial on the other charges.

Moreover, insofar as the defendant may be arguing that his plea was not knowing and voluntary, no evidence would support such an argument. As discussed above, the court was aware of the defendant's misgivings during the plea hearing. The court questioned the defendant—at length—during the plea hearing, accommodated his concerns and hesitation at that time, and accepted his plea after intensive inquiry and after being convinced that the defendant understood the proceedings, the charges, and the negotiated sentence. There is no question in the court's mind but that the plea was entered knowingly and voluntarily. The court also finds, based on observations of the defendant during the plea hearing and the more recent hearings on December 19, 2022 and January 3, 2023, that the defendant simply regrets having agreed to a sentence of 108

months and believes he should have been offered a shorter sentence. The defendant's regrets following entry of his plea do not constitute fair and just grounds for withdrawing his plea. *Accord United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006) ("Withdrawal of a plea is appropriate where there is a real confusion or misunderstanding of the terms of the agreement.").

Insofar as the defendant is suggesting that he received ineffective assistance of counsel with regard to the plea, this is certainly an argument that he may raise in a post-conviction petition, but prior counsel's conduct and explanations during the plea hearing demonstrated that he had spent hours with his client in an effort to ensure that the defendant understood the benefits of the plea bargain and the terms of the agreement. Counsel also clearly believed, and had explained to his client his belief, that the search warrant affidavit was defective and that the Motion to Suppress was potentially meritorious, but that the granting of the Motion to Suppress would not mean that all charges against the defendant would be dismissed and, instead, that the plea bargain represented the defendant's best chance at a reduced sentence. Nothing in the court's record to date suggests ineffective assistance of counsel.

None of the background circumstances, in sum, weighs in favor of permitting withdrawal.

### E.    The Defendant's Nature and Background

A defendant's intelligence, sophistication, and understanding of the plea are relevant to a court's analysis of this factor. *See Ellis*, 470 F.3d at 285 (finding that this factor weighed against the defendant's motion to withdraw plea because the defendant was highly educated and sophisticated and understood what he was doing when he entered his plea). Although Primm attended special education classes and did not graduate from high school, the court already found that he was competent and capable of entering an informed plea. There is no indication that he did not understand his plea and the consequences of pleading guilty. This factor does not weigh in favor of granting the motion to withdraw the plea.

**F.  The Defendant's Prior Experience with the Criminal Justice Center**

This factor weighs heavily against the defendant's motion to withdraw as well, because the defendant has significant experience with the criminal justice system. He has Tennessee felony convictions for theft of property, especially aggravated robbery, possession of .5 grams or more of cocaine in a drug free school zone, possession with the intent to distribute less than .5 grams of cocaine, and evading arrest with a motor vehicle (two times), and a federal felony conviction for being a felon in possession of a firearm. Several of the defendant's convictions were the result of guilty pleas, and the defendant pleaded guilty, via a Rule 11(c)(1)(B) plea agreement, in his prior federal case in front of this judge. *See United States v. Primm*, No. 3:09-cr-00194 (M.D. Tenn. Nov. 15, 2010), Plea Agreement (Doc. No. 64, at 10–18). The defendant's extensive familiarity with both the state and federal criminal justice systems weighs against his motion to withdraw. *Accord United States v. Wynn*, 663 F.3d 847, 850 (6th Cir. 2011) (finding that a defendant was "familiar with the criminal justice system and plea process because he had previously pleaded guilty to charges"); *see also United States v. Lewis*, 800 F. App'x 353, at 359–60 ("Although Lewis may not be an expert on the United States Sentencing Guidelines, he was nevertheless sufficiently familiar with the criminal justice system and the plea process such that this factor does not weigh in his favor.").

**G.  Potential Prejudice to the Government**

Because the other relevant factors weigh against granting the defendant's motion, the court has no real reason to consider this factor. *See Ellis*, 470 F.3d at 286 ("[T]he government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." (quoting *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987)).

In any event, at the time Primm initially moved to withdraw his plea, the government may not have been significantly prejudiced. The government posits now, however, that it would suffer prejudice if the plea were withdrawn, because the conduct giving rise to the charges took place more than two and one-half years ago, involved multiple witnesses and confidential informants who may or may not still be available to testify, and involved a co-defendant who has already pleaded guilty, been sentenced, and is on supervised release. The court finds it likely that the government would suffer prejudice if the motion were granted, but does not accord much weight to this factor.

## IV.   CONCLUSION AND ORDER

The court finds, for the reasons set forth herein, that the factors relevant to the defendant's Motion to Withdraw Guilty Plea, considered collectively, weigh strongly against permitting him to withdraw his plea. Because the defendant has not established "a fair and just reason for requesting the withdrawal," Fed. R. Crim. P. 11(d)(2)(B), his *pro se* motion for withdrawal of the plea (Doc. No. 110) and supplemental Motion to Withdraw Guilty Plea filed by new counsel (Doc. No. 134) are both **DENIED**. The *pro se* motion for appointment of new counsel (also Doc. No. 110) is **DENIED AS MOOT**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge